United States Court of Appeals
Fifth Circuit

**F I L E D**

May 18, 2004

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-31068

_____

VINOD KUMAR DAHIYA,

                              Plaintiff-Appellee,

versus

TALMIDGE INTERNATIONAL, LTD., NEPTUNE SHIPMANAGEMENT SERVICES
(PTE) LTD., AMERICAN EAGLE TANKERS, INC., LTD., AMERICAN EAGLE
TANKERS AGENCIES, INC., BRITANNIA STEAM SHIP INSURANCE
ASSOCIATION, LTD.,

                              Defendants-Appellants.

--------------------
Appeal from the United States District Court
for the Eastern District of Louisiana, New Orleans
--------------------

Before BARKSDALE, DeMOSS, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Defendants-Appellants filed a motion for rehearing complaining
of this court's order of dismissal entered March 11, 2004.  After
considering this motion for rehearing, which we treat as a petition
for reconsideration, the motion is GRANTED, the previous order of
dismissal is withdrawn, and the following opinion is entered in
lieu thereof.

Plaintiff-Appellee Vinod Kumar Dahiya filed this maritime
personal injury action in Louisiana state court against several
Defendants-Appellants:  his  employer,  Neptune  Shimpmanagement

Services; the owner of the ship on which he was injured, Talmidge International; co-owners of the fleet to which the ship belongs, American Eagle Tankers and American Eagle Tankers Agencies; and the ship's insurer, Brittania Steam Ship Insurance Association. Appellants removed to federal court on the grounds that their dispute with Dahiya was subject to an arbitration agreement governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C.A. §§ 201-208 (West 1999 & Supp. 2003). The district court remanded the case to state court for lack of subject matter jurisdiction and denied Appellants' motions to compel arbitration and to stay the proceedings. Because this remand deprives us of appellate jurisdiction to consider any part of the district court's order, we dismiss this appeal.

I.

In 1999, Dahiya and Neptune signed two documents--a "deed" and a "bond"--in New Delhi, India. Together, the documents provided that Dahiya would receive two years of training, then work for Neptune for two years. The deed included an arbitration clause providing that any dispute arising out of the deed would be subject to arbitration in Singapore or India.[1]

As part of his training, Dahiya worked on the M/T EAGLE AUSTIN, a vessel owned by Talmidge. Dahiya suffered burns while

---

[1] The bond included a similar arbitration clause, but only the deed's arbitration clause is at issue in this case because the dispute arose during Dahiya's training.

operating the vessel's incinerator and was later evacuated to a Louisiana hospital, where he received treatment.

Dahiya returned to India, but he sued Neptune, Talmidge, and the three other Appellants in Louisiana state court. Dahiya's suit, brought under the Savings to Suitors Clause, 28 U.S.C.A. § 1333(1) (West 1993), alleged that Appellants had breached obligations under the Jones Act, 46 U.S.C.A. app. § 688 (West 2003), general maritime law, and other applicable law.

Appellants invoked federal jurisdiction as a federal question, *see* 28 U.S.C.A. § 1441(b) (West 1994), and under § 205 of the Convention, 9 U.S.C.A. § 205 (West 1999),[2] and removed to federal court. Appellants filed their removal petition more than thirty days after receiving notice of Dahiya's suit. Generally, such a delay would preclude removal. *See* 28 U.S.C.A. § 1446(b) (West 1994). Section 205, however, allows removal at any time prior to trial, and Dahiya does not dispute that Appellants filed their petition before trial.

Once in federal court, Appellants moved to compel arbitration and to stay the proceedings or, in the alternative, to dismiss Dahiya's suit. Dahiya moved to remand. Dahiya argued that the deed's terms did not qualify as an arbitration agreement under the Convention and therefore could not support removal under § 205.

---

[2] Section 205 provides that "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending."

The district court sided with Dahiya and, in a single order, remanded the case to state court and denied Appellants' motions to stay proceedings and to compel arbitration. The court began its order by assessing the validity of what it called the "forum selection clause"--i.e., the arbitration clause in the deed between Dahiya and Neptune. The court held that this clause was invalid because forum selection clauses contravene Louisiana public policy. The court then turned directly to the question of its jurisdiction. The court began by noting that because Appellants failed to remove within thirty days, federal jurisdiction hinged entirely on § 205. With respect to jurisdiction under § 205, the court reasoned that because the deed contained no valid forum selection clause, the parties had not entered an agreement to arbitrate valid under the Convention. The court therefore concluded that it had no jurisdiction under § 205, remanded the case, and denied Appellants' pending motions.

Appellants sought review of the district court's order and moved for a stay of the the ongoing state court proceedings. Dahiya moved to dismiss for lack of appellate jurisdiction. Both motions have been carried with the case.[3]

---

[3] While this appeal was pending, Dahiya's state court suit proceeded. Even before we heard oral arguments, a Louisiana trial court overruled Appellants' exceptions regarding arbitration and jurisdiction. Subsequently, Appellants unsuccessfully sought supervisory writs from the Louisiana Court of Appeals and the Louisiana Supreme Court.

Based on the denial of these writs, Dahiya filed in this Court a motion to dismiss for res judicata. Dahiya claimed that the Louisiana trial court rulings and the denial of supervisory writs constituted final judgments and precluded Appellants from seeking a motion compelling arbitration from this Court. Appellants failed to respond in time, and we dismissed the appeal. Appellants promptly filed a motion for panel rehearing, which we treated as a motion for

II.

Our analysis begins and ends with Dahiya's motion to dismiss, for in the absence of appellate jurisdiction, we have no authority to review the district court's order.

We cannot review the remand itself. After a district court remands a case to state court for lack of subject matter jurisdiction, 28 U.S.C. § 1447(d) bars a federal appellate court from reviewing the remand ruling "no matter how erroneous." *Arnold v. State Farm Fire & Cas. Co.*, 277 F.3d 772, 775 (5th Cir. 2001); *see* 28 U.S.C.A. § 1447(c), (d) (West 1994). The district court appears to have concluded that it lacked subject matter jurisdiction and to have remanded on that basis. Thus, under § 1447(d), we cannot review the remand.

That Appellants removed under § 205 of the Convention does not vest us with jurisdiction despite § 1447(d). In cases removed under § 205, "[t]he procedure for removal of causes otherwise provided by law shall apply." 9 U.S.C.A. § 205. This "procedure for removal" includes the strictures of § 1447(d). *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 624-625 (8th Cir. 1997); *LaFarge Coppee v. Venezolana de Cementos, S.A.C.A.*, 31 F.3d 70, 71-72 (2d Cir. 1994); *In re Amoco Petroleum Additives Co.*, 964 F.3d 706, 712-13 (7th Cir. 1992). Thus, when a case removed under § 205 is subsequently remanded for lack of

panel reconsideration. Because we have granted that motion, we now turn to the other issues in this case.

subject matter jurisdiction, an appellate court cannot review the order of remand.

Appellants contend that, regardless of whether we can review the remand itself, we have jurisdiction to review the district court's denial of arbitration and denial of stay under 9 U.S.C. § 16, which provides that appeals may be taken from orders refusing stays or denying motions to compel arbitration, *see* 9 U.S.C.A. § 16(a)(1)(A),(C) (West 1999).[4]  We lack jurisdiction under § 16 because the denials of Appellants' motions to stay and to compel arbitration accompanied a remand for lack of subject matter jurisdiction.  *See Transit Cas.*, 119 F.3d at 623-625.  Any order remanding for lack of subject matter jurisdiction necessarily denies all other pending motions, for "[u]nless a federal court possesses subject matter jurisdiction over a dispute, . . . any order it makes (other than an order of dismissal or remand) is void." *John G. & Marie Stella Kenedy Mem'l Found. v. Mauro*, 21 F.3d 667, 674 (5th Cir. 1994) (quoting *Shirley v. Maxicare Tex., Inc.*, 921 F.2d 565, 568 (5th Cir. 1991)).  Motions to stay proceedings and to compel arbitration will be common if not universal in cases removed under § 205.  Thus, in the vast majority of cases removed under § 205, an order of remand will be the effective equivalent of a denial of motions to stay proceedings and to compel arbitration. Recognizing appellate review of such remand orders under § 16 would

---

[4]  Section 16 is not a part of the Convention, but its provisions are applicable to cases brought under the Convention.  *See* 9 U.S.C.A. § 208 (West Supp. 2003).

circumvent § 1447(d) by affording review of remand orders issued in nearly every case removed under § 205. Section 205, by expressly invoking "[t]he procedure for removal of causes otherwise provided by law," forecloses such a result.

District court determinations accompanying an order of remand are reviewable in spite of § 1447(d) if they meet the requirements first outlined in *City of Waco, Texas v. United States Fidelity & Guaranty Co.*, 297 U.S. 140 (1934). Under *Waco*, a federal appeals court can review a pre-remand decision made by a district court if that decision is "separable" from the remand order and independently reviewable through a mechanism such as the collateral order doctrine. *Heaton v. Monogram Credit Card Bank*, 297 F.3d 416, 421 (5th Cir. 2002). To be separable, the decision must meet two criteria. First, the decision must have preceded the remand order "in logic and in fact" such that the decision was "made by the [d]istrict [c]ourt while it had control of the cause." *Waco*, 293 U.S. at 143. Second, the decision must be "conclusive," i.e., "functionally unreviewable in state courts." *Arnold*, 277 F.3d at 776.

The district court's refusal to compel arbitration and to stay proceedings is not reviewable under *Waco* because that refusal was not conclusive. Our precedent "has defined conclusiveness in terms of whether the order was 'substantive' or 'jurisdictional': if a decision is simply jurisdictional it is not conclusive." *Doleac ex rel. Doleac v. Michalson*, 264 F.3d 470, 486 (5th Cir. 2001). Thus,

in *Soley v. First National Bank of Commerce*, 923 F.3d 406, 410 (5th Cir. 1991), we considered whether we could review a pre-remand ruling on ERISA preemption and concluded that "because we interpret[ed] the remand order as jurisdictional, the state court [would] have an opportunity to consider the appellants' preemption defense and the district court's order [would] have no preclusive effect."  Likewise, in *Linton v. Airbus Industrie*, 30 F.3d 592, 597 (5th Cir. 1994), we considered whether we could review a district court's pre-remand rulings on foreign sovereign immunity and held that "[i]n light of the district court's ultimate conclusion that the entire case had to be remanded for lack of subject matter jurisdiction, the district court's [foreign sovereign immunity] determination [could] be deemed a jurisdictional finding under the facts of this case and, as such, [could] be reviewed by the state court upon remand."  Most recently, in *Angelides v. Baylor College of Medicine*, 117 F.3d 833, 837 (5th Cir. 1997), we explained that a district court's pre-remand immunity and exhaustion determinations  "were not 'conclusive' because, as jurisdictional decisions, they [could] be reviewed in the state court."  In sum, when a district court makes a determination in the process of remanding a case for lack of jurisdiction, that determination is jurisdictional and can be revisited by a state court upon remand.

In this case, the district court determined that the arbitration clause was invalid in the process of ascertaining whether it had subject matter jurisdiction.  Under *Soley*, *Linton*,

or *Angelides*, that determination is jurisdictional and therefore has no preclusive effect in state court. Thus, because the district court's refusals to compel arbitration and to stay proceedings were not conclusive, those refusals are not reviewable under *Waco*.

In their efforts to circumvent § 1447(d), Appellants rely on *Beiser v. Weiler*, 284 F.3d 665 (5th Cir. 2002). *Beiser* does not control this case. In *Beiser*, as in this case, defendants removed to federal court under § 205. *Id.* at 666-67. The district court in *Beiser*, however, determined that it had jurisdiction and *denied* the plaintiff's motion to remand. *Id.* at 667. Thus, in *Beiser* we did not confront the bar to appellate jurisdiction established in § 1447(d), which inheres only after remand.[5]

Appellants insist, and we recognize, that the argument for remand advanced by Dahiya and accepted in the district court closely resembles the argument for remand we disapproved in *Beiser*.[6] If we could review that argument, we might reject it for many of the reasons outlined in *Beiser*. Section 1447(d), however,

_____

[5] In *Beiser*, we speculated in dicta about what would have happened had the district court remanded the case. *Id.* at 672-74. We recognized that § 1447(d) would have deprived us of appellate jurisdiction and led to the unappealing result of having state courts handle questions of federal arbitration law. *Id.*

[6] In *Beiser*, the plaintiff argued that the district court should have remanded because his case did not "relate to" the arbitration agreement on which defendants relied. *Id.* at 668. We rejected the plaintiff's theory as inconsistent with the plain language of § 205 and the federal policy favoring arbitration. *Id.* at 668-74. In particular, we advised district courts against conflating a jurisdictional analysis with an evaluation of the merits of a defendant's motion to compel arbitration. *Id.* at 670-72.

forecloses appellate review even of egregiously mistaken district court remands. *See Arnold*, 277 F.3d at 775.

### III.

Because we lack appellate jurisdiction to review any facet of the district court's order, we cannot address the district court's discussion of international arbitration law. We therefore GRANT Dahiya's motion to dismiss this appeal and DENY as moot Appellants' motion to stay proceedings pending arbitration.

DISMISSED.

DeMOSS, Circuit Judge, dissenting:

I agree with the majority that if the district court's remand determination was based on a lack of removal jurisdiction, 28 U.S.C. § 1447(d) likely precludes us from reviewing the remand order itself.[7]  However, I respectfully disagree with the majority's dismissal for lack of jurisdiction and would conclude that we have appellate jurisdiction over the order denying

---

[7]I would like to point out that while the separate removability provision under 9 U.S.C. § 205 of the Convention Treaty (the "Convention"), enabled at 9 U.S.C. § 201 *et seq.*, states "the procedure for removal of causes otherwise provided by law shall apply," it also explicitly relaxes certain requirements under 28 U.S.C. § 1446.  That is, removals under the Convention are not subject to the 30-day and one-year time limitations and can occur "at any time before the trial," and the ground for removal (here, the arbitration provision in an international agreement) does not have to appear on the face of the plaintiff's state court complaint "but may be shown in the petition for removal."  9 U.S.C.A. § 205 (West 2004).

Furthermore, the terms of 9 U.S.C. § 16(a)(1)(C) (which is made applicable to the Convention by 9 U.S.C. § 208) expressly provide for an appeal from an order "denying an application under  section 206 of this title to compel arbitration," which immediate appealability is unique to denials of arbitration under the Convention.  9 U.S.C.A. § 16(a)(1)(C) (West 2004).  The language of § 203 expressly states that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States," 9 U.S.C.A. § 203 (West 2004), and under § 205 an action removed from state court "shall be deemed to have been brought in the district court to which it is removed."  *Id.* § 205.  These distinctions suggest a fundamental difference between removal of a case under 28 U.S.C. § 1441 *et seq.* and removal of a case under 9 U.S.C. § 205.  Under §§ 1441-1446, the purpose is to change the forum in which the same case will be tried as would have been tried in the state court; whereas, under § 205, the purpose is to allow the removing party to assert in federal court the existence of an agreement to arbitrate under the Convention and compel such arbitration in lieu of the trial that would otherwise occur in the state court.

Thus, in a typical removal under § 1441 *et seq.*, the nonappealability of a remand order is a reflection of the congressional policy to prevent delays of the trial on the merits by appeals over the validity of the remand order.  But removal under § 205 raises the issue of whether there should be a trial on the merits at all; and the immediate appeals process authorized under 9 U.S.C. § 16 reflects the strong congressional policy of giving preference to arbitration over litigation as to agreements covered by the Convention.  It seems that Congress intended to treat removals under the Convention differently and more leniently than removals under the general removal statutes.  There may be an argument that the language of the Convention should control, rather than § 1447(d), when dealing with an agreement to arbitrate under the Convention.  However, no case purports to resolve this apparent conflict between 28 U.S.C. § 1447(d) and 9 U.S.C. § 16; so I do not conclude here that the remand order itself is reviewable under § 16.

arbitration and that the district court erred in refusing to order arbitration under the Convention Treaty (the "Convention"), 9 U.S.C. § 201 *et seq.*

## I.   This Court can review the district court's denial of the motion to compel arbitration and stay proceedings.

I firmly believe that an order denying arbitration, such as the district court entered here, is reviewable as a separable and collateral order. *See **Doleac ex rel. Doleac v. Michalson***, 264 F.3d 470, 478 (5th Cir. 2001). There are two distinct steps in the consideration: (1) whether the order is separable from the remand to overcome the bar of § 1447(d); and (2) whether the order is appealable under 28 U.S.C. § 1291 or otherwise. ***Id.*** at 478-79, 485. The order denying arbitration here meets both requirements.

### A.   Separability of the denial of arbitration.

In ***City of Waco v. United States Fidelity & Guaranty Co.***, 293 U.S. 140 (1934), the Supreme Court found the appellate court could review an order dismissing a cross-action that accompanied a remand for lack of diversity jurisdiction because it "in logic and in fact . . . preceded that of remand and was made by the District Court while it had control of the cause." ***Id.*** at 143. To be found separable, the order also must be conclusive, in that it has the "preclusive effect of being functionally unreviewable in the state court." ***Doleac***, 264 F.3d at 482 (quoting ***Angelides v. Baylor Coll. of Med.***, 117 F.3d 833, 837 (5th Cir. 1997)).

In the district court's single order, the determination that no agreement to arbitrate existed did precede the remand order "in logic." Naturally, without a valid arbitration agreement in play, any motion to compel arbitration would have to be denied. Here, the finding that no valid arbitration agreement existed under Louisiana policy and law also provided the basis "in logic" to consider remand; it served as the "impetus for remanding the case." *Doleac*, 264 F.3d at 483 (quoting *Tillman v CSX Transp., Inc.*, 929 F.2d 1023, 1026 (5th Cir. 1991)).

Likewise, although the denial of arbitration and the remand stemmed from the same physical order, the arbitration determination also preceded the remand "in fact." It would have had to, because the opposite sequence of events (remand, then denial of arbitration) would have meant the district court rendered a meaningless denial of arbitration because at that point of remand jurisdiction would have already passed to the state court. Also, the "in fact" inquiry considers if:

> [T]he issue has independent relevance in adjudging the rights of the parties (i.e., relevance beyond determining the existence of federal subject matter jurisdiction), the decision is separable and falls within the reasoning of *City of Waco* – even if it also happens to have an incidental effect on the court's jurisdiction.

*Doleac*, 264 F.3d at 486 (quoting *Powers v. Southland Corp.*, 4 F.3d 223, 228 (3d Cir. 1993)). Here, the district court determined whether the arbitration clause in Dahiya's deed was valid under Louisiana law. While this determination did affect jurisdiction in

that an invalid arbitration clause meant there could be no arbitration agreement under the Convention for proper removal under § 205, it also had powerful "relevance beyond determining [] jurisdiction." It cut Appellants off from their right to have their dispute with Dahiya settled by an arbitrator, outside the courtroom.

After considering whether the order is separable "in logic" and "in fact," this Court must determine whether the order is conclusive, that is, functionally unreviewable in the state court. *Doleac*, 264 F.3d at 482. "[O]ur court has defined conclusiveness in terms of whether the order was 'substantive' or 'jurisdictional': if a decision is simply jurisdictional, it is not conclusive." *Id.* at 486. However, a "substantive" decision will have a preclusive effect in the state court. *Id.* at 487. Dahiya argues, in essence, that the district court's finding on the issue of arbitration is just jurisdictional because it can have no preclusive collateral estoppel effect on the state court. The doctrine of collateral estoppel has three requirements: (1) the prior federal decision resulted in a "judgment on the merits"; (2) the same fact issue must have been "actually litigated" in the federal court; and (3) the disposition of that issue must have been "necessary to the outcome" of the prior federal litigation. *Falcon v. Transportes Aeros de Coahuila, S.A.*, 169 F.3d 309, 312 (5th Cir.

1999) (quoting *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n.5 (1979)).

Usually, a determination that a court lacks jurisdiction is not considered a judgment on the merits for collateral estoppel to apply. *See Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 562 (5th Cir. 1983) (en banc). But legal findings that serve as prerequisites to and are thus necessary to make a lack of jurisdiction decision can have a collateral estoppel effect in state court. *See Falcon*, 169 F.3d at 312-13.

Here, a finding that no valid arbitration agreement existed equated precisely to a "judgment on the merits" of the efficacy of such arbitration clause and shut off any arbitration proceedings brought by Appellants. Unlike in *Doleac* where the amendment allowing joinder merely changed the court in which the same claims would be litigated, 264 F.3d at 487-88, the denial of arbitration here closed the "non-court" forum off entirely from Appellants.[8]

As for the arbitration issue having been "actually litigated" and "necessary to the outcome," we indicated in *Falcon* that when a federal district court determines it does not have subject matter

---

[8]The situation here is analogous to the resubstitution order we found separable in *Mitchell v. Carlson*, 896 F.2d 128, 133 (5th Cir. 1990), where an entity not otherwise subject to litigation was resubstituted as a party and thus became subjected to suit. *Doleac Doleac ex rel. Doleac v. Michalson*, 264 F.3d 470, 487 (5th Cir. 2001). Appellants have become subjected to litigation since the district court determined they had no valid arbitration defense.

jurisdiction, findings necessary to make that decision have collateral estoppel consequences in a state court. 169 F.3d at 312-13 (citation omitted). Thus, here, because the district court's determination that no arbitration agreement existed was a legal finding "necessary" to its decision that it did not have § 205 removal jurisdiction, Dahiya could attempt to preclude Appellants' defense of arbitration by raising collateral estoppel in the state court.

**B.** **Appealability of the denial of arbitration.**

Having found the arbitration determination separable, the second step under **Doleac** is that the separable ruling must also be appealable as a final decision under 28 U.S.C. § 1291 or under an exception to finality. 264 F.3d at 489. A denial of a motion to compel arbitration is not a final decision per § 1291. *See* **Quackenbush v. Allstate Ins. Co.**, 517 U.S. 706, 712 (1996). However, this Court has noted the importance of a party's right and ability to appeal decisions by district courts refusing to enforce arbitration under the Convention. **Beiser v. Weyler**, 284 F.3d 665, 673 (5th Cir. 2002).

Here, Appellants argue that 9 U.S.C. § 16 provides direct appealability of the denial of arbitration. Section 16(a)(1)(A) clearly does provide for direct appeals from orders "refusing a stay of any action under section 3 of this title," and § 16(a)(1)(C) clearly allows for direct appeals from orders

16

"denying an application under section 206 of this title to compel arbitration." 9 U.S.C.A. § 16(a) (West 2004). However, because the district court ultimately did not believe it had removal jurisdiction under the legislation adopting the Convention, 9 U.S.C. § 201 *et seq.*, its denial of Appellants' motion to compel arbitration could not have been under § 206 and likewise its denial of Appellants' motion to stay proceedings pending arbitration could not have been under § 3. Thus, this Court cannot rely on 9 U.S.C. § 16 itself for the order's appealability.[9]

## 1. *Cohen exception to finality rule.*

To determine whether a nonfinal order is appealable, the common analysis entails the approach first outlined in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546-47 (1949), used to determine whether district court orders not appealable as final decisions under 28 U.S.C. § 1291 can nonetheless be reviewed as collateral orders. In *Doleac* this Court restated this four-step analysis: the decision (1) cannot be tentative, informal, or incomplete; (2) must deal with claims of right separable from, and

---

[9]This Catch-22 problem cries out for immediate remedy from the Supreme Court in this case and, ultimately, from Congress for all comparable cases that are sure to follow. It seems entirely absurd – in light of the Supreme Court's and Congress's extremely clear intentions that arbitration properly subject to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, and the Convention be treated and interpreted favorably and that denials of arbitration properly subject to the FAA and the Convention be immediately appealable – (1) that a state could successfully legislate an end run to defeat preferred federal removal jurisdiction in cases where there can scarce be doubt that the arbitration agreement at issue falls under the auspices of the Convention and is validly invoked, and (2) that district courts could apply that state's law to ignore preemptive federal arbitration law.

collateral to, rights asserted in the action; (3) must be effectively unreviewable on the appeal from final judgment; and (4) must involve an issue too important to be denied review. 264 F.3d at 490-91 (citing *Cohen*, 337 U.S. at 546). Whether an order denying arbitration is appealable as a collateral exception to § 1291 is a *res nova* issue for this Court.[10]

First, the denial of arbitration by the district court here was anything but tentative, informal, or incomplete. The determination that no valid arbitration clause existed due to Louisiana law and policy conclusively decided the disputed legal question of the validity of Appellants' arbitration defense.

Second, the denial of arbitration did not in any way affect, nor was it affected by, the underlying merits of Dahiya's Jones Act maritime action. The district court's denial of arbitration dealt solely with Appellants' separate right to assert arbitration as a

---

[10]This Court has previously decided that district court decisions that favor or accommodate arbitration, such as orders compelling arbitration and grants of stays of legal proceedings pending arbitration, are not appealable under the *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), collateral order exception. *West of England Ship Owners Mut. Ins. Assoc. (Luxembourg) v. Am. Marine Corp.*, 981 F.2d 749, 751 (5th Cir. 1993) (order compelling arbitration and staying litigation); *Turboff v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 867 F.2d 1518, 1520 n.5 (5th Cir. 1989) (same); *Jolley v. Paine Webber Jackson & Curtis, Inc.*, 864 F.2d 402, 404 (5th Cir. 1989), *supplemented*, 867 F.2d 891 (5th Cir. 1989) (order staying litigation). This Court has also previously decided that a district court order denying a stay of litigation, where pending litigation in the same district court concerned the question of arbitrability of a dispute, is not appealable as a *Cohen* collateral order. *Rauscher Pierce Refsnes, Inc. v. Birenbaum*, 860 F.2d 169, 171-72 (5th Cir. 1988) (noting such decision was not effectively unreviewable because the final judgment of the declaratory judgment action could be appealed and set aside in favor of arbitration). However, these cases addressed entirely different questions than what this Court considers here, whether anti-arbitration decisions are appealable as collateral orders.

defense, not with any right of Dahiya to recover on his negligence and unseaworthiness claims.

Third, as already discussed in Part I.A., because the state court could be bound by collateral estoppel on remand as to the district court's finding on the validity of Dahiya's arbitration agreement, the denial of arbitration would be effectively unreviewable on the appeal from final judgment.[11]

Lastly, the denial of a party's right to enforce arbitration and thus not be subject to litigation in court is an issue too important to be denied appellate review. Congress expressed that very policy by enacting 9 U.S.C. § 16. *See* **H.R. Rep. No. 100-889**, at 36-37 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 5997.

Because in ***Moses H. Cone Memorial Hospital v. Mercury Construction Corp.***, 460 U.S. 1 (1983), the Supreme Court found a district court stay that effectively denied arbitration appealable within the ***Cohen*** exception to finality rule, the step to an outright denial of arbitration also constituting an exception to

---

[11]This is analogous to the situation presented in ***Moses H. Cone Memorial Hospital v. Mercury Construction Corp.***, 460 U.S. 1 (1983). There, plaintiff filed suit in state court seeking a declaratory judgment that there was no right to arbitration under the construction contract with defendant. ***Id.*** at 7. Defendant then filed a diversity suit in federal district court, seeking an order compelling arbitration under § 4 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.* ***Id.*** The district court stayed the federal case pending resolution of the state action. ***Id.*** The Supreme Court found the district court's refusal to decide the arbitration issue appealable under the ***Cohen*** exception to the finality rule. ***Id.*** at 11. "[T]his order would be entirely unreviewable if not appealed now. Once the state court decided the issue of arbitrability, the federal court would be bound to honor that determination as res judicata." ***Id.*** at 12.

finality under § 1291 is small indeed.  In fact, the Fourth Circuit made this exact step in *Peoples Security Life Insurance Co. v. Monumental Life Insurance Co.*, 867 F.2d 809, 812 (4th Cir. 1989). I would take that same step and find the district court's denial of Appellants' motion to compel arbitration and stay proceedings pending arbitration appealable as a collateral order exception to § 1291.

## 2. Interlocutory decision appealable per 28 U.S.C. § 1292.

The *Cohen* collateral order exception is not the only means to achieve appellate review of the district court's denial of arbitration.  *See* *Peoples*, 867 F.2d at 812 (easily conflating an order denying arbitration falling under the *Cohen* exception and also being appealable of right as an interlocutory decision refusing an injunction under § 1292(a)).  Where a district court disfavors arbitration by staying arbitration proceedings pending outcome of litigation, this Court has found such stays appealable as interlocutory injunctions under § 1292(a)(1), which grants appealability over certain nonfinal interlocutory decisions. 28 U.S.C.A. § 1292(a)(1) (West 2004); *Tai Ping Ins. Co., Ltd. v. M/V WARSCHAU*, 731 F.2d 1141, 1143, 1146 (5th Cir. 1984) (noting "only the most exceptional circumstances will justify any action . . . that serves to impede arbitration of an arbitrable dispute"); *City of Meridian, Miss. v. Algernon Blair, Inc.*, 721 F.2d 525, 529

(5th Cir. 1983) (reversing injunction of arbitration where district court wrongly determined case was not arbitrable).

In *Sedco, Inc. v. Petroleos Mexicanos Mexican National Oil Co. (Pemex)*, 767 F.2d 1140 (5th Cir. 1985), this Court determined that the Convention abrogated a longstanding rule of admiralty law that otherwise would have barred appeal of the district court's refusal to enforce an arbitration clause. *Id.* at 1147, 1149 (citation omitted). In finding the denial of arbitration appealable under 28 U.S.C. § 1292(a)(1) as an appeal from an interlocutory decision that refused injunctive relief, this Court reasoned that if the defendant's motion had been granted instead of denied, the court's order would have required the plaintiff to participate in arbitration in a set location. *Id.* at 1149 ("Such an order would be, in effect, a mandatory injunction."). Therefore, even though it was not styled as such, the district court's order had "all the earmarks of a denial of injunctive relief under 28 U.S.C. § 1292." *Id.*

In *National Iranian Oil Co. v. Ashland Oil, Inc.*, 817 F.2d 326 (5th Cir. 1987), although the Convention did not apply because Iran was not a signatory and we did not mention *Sedco*, this Court likewise found that the district court's interlocutory order declining to compel arbitration and stay litigation was a denial of

injunctive relief directly appealable under 28 U.S.C. § 1292(a)(1). *Id.* at 330.[12]

Title 9's section 16 on appeals was enacted by Congress in 1988 and amended in 1990. 9 U.S.C.A. § 16 note (West 2004). Thus, we decided **Tai Ping**, **City of Meridian**, **Sedco**, and **National Iranian Oil** against a backdrop where the FAA and the Convention did not specifically provide for immediate appeals of denials of

---

[12]While this Court decided **National Iranian Oil v. Ashland Oil, Inc.**, 817 F.2d 326 (5th Cir. 1987), against the backdrop of the **Enelow-Ettelson** doctrine, **Enelow v. New York Life Ins. Co.,** 293 U.S. 379 (1935)**, overruled in Gulfstream Aerospace Corp. v. Mayacamas Corp.**, 485 U.S. 271, 287 (1988), which had provided that an order granting or denying a stay of litigation where a party had set up an equitable defense to an action at law was, in effect, a an interlocutory injunction appealable under § 1292(a)(1), this does not foreclose us from finding that denials of arbitration are appealable as injunctions under § 1292(a)(1). The Supreme Court in **Gulfstream** stressed that § 1292(a)(1) would "continue to provide appellate jurisdiction over orders that grant or deny injunctions and orders that have the practical effect of granting or denying injunctions and have serious, perhaps irreparable, consequence." 485 U.S. at 287-88 (citations and internal quotes omitted).

In our cases following **Gulfstream**, we have denied § 1292(a)(1) review of district court decisions both denying and granting stays of litigation, but only where either the arbitration question was still actively pending in the district court or where the arbitration question had already been decided in favor of arbitration. *See* **Adams v. Georgia Gulf Corp.**, 237 F.3d 538, 542 (5th Cir. 2001) (stay denied after arbitrable dispute found under Convention); **Jolley**, 864 F.2d at 404 (stay granted pending arbitration), *supplemented*, 867 F.2d at 892 (finding nonreviewability of decision that granted stay pending arbitration consistent with proarbitration intent of Congress in then-numbered § 15 of the FAA); **Rauscher**, 860 F.2d at 169, 171 (stay denied where declaratory judgment action to determine arbitrability under the parties' contract was still pending in same district court, such that denying stay entailed no serious or potentially irreparable consequences and final judgment in declaratory judgment action could "be set aside on appeal in favor of arbitration").

Here, the district court has already clearly decided the arbitrability question in the negative against Appellants. Without immediate appellate review of the denial to compel arbitration and associated denial of stay of proceedings, Appellants face the serious consequence of being forced to litigate a dispute Dahiya already agreed to have submitted to arbitration. *See* **City of Meridian, Miss. v. Algernon Blair, Inc.**, 721 F.2d 525, 529 (5th Cir. 1983) (noting how an injunction against arbitration causes irreparable harm due to the expense of litigation). The situation is also potentially irreparable because the state court on remand may be collaterally estopped from reviewing the validity of Dahiya's agreement to arbitrate.

arbitration (in admiralty or otherwise). *See also* **Peoples**, 867 F.2d at 812 (finding, also before § 16's enactment, that a district court's denial of arbitration and of a stay pending arbitration under an arbitration clause qualifying under the FAA was appealable of right under § 1292(a)); **Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH**, 585 F.2d 39, 42 n.7 (3d Cir. 1978) (noting same). There is nothing to indicate that these cases' common holding as to denials of arbitration being appealable as mandatory injunctions under § 1292(a)(1) has been abrogated; in fact, such a holding is entirely consistent with the proarbitration policy behind § 16.[13] *See* **KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.**, 184 F.3d 42, 47 (1st Cir. 1999) (finding order staying pending arbitration immediately appealable as an injunction under both § 1292(a) and 9 U.S.C. § 16(a)(2)).[14]

---

[13]The proarbitration viewpoint of Congress, as it pertains to the appellate process, could not be clearer. The purpose of § 16, as indicated by its legislative history, is to provide for interlocutory appeals when a trial court rejects the contention that a dispute is arbitrable under an agreement of the parties and instead requires the parties to litigate. **H.R. Rep. No. 100-889**, at 36-37 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 5996-97 (discussing then-numbered § 15 of Title 9). In direct contrast, interlocutory appeals are specifically prohibited when the trial court finds that the parties have agreed to arbitrate the dispute. *Id.* at 37 (same).

[14]However, § 16(b) provides that nonfinal orders that grant or favorably treat arbitration under the FAA or the Convention are not directly appealable except as provided by the certification process in § 1292(b). *See* **Cargill Ferrous Int'l v. SEA PHOENIX MV**, 325 F.3d 695, 697 (5th Cir. 2003); **West of England**, 981 F.2d at 751 (disallowing appeal of order compelling arbitration and grant of stay of litigation pending arbitration under § 16(b)); **Turboff**, 867 F.2d at 1520 (disallowing same under then-numbered § 15 of the FAA); **Jolley**, 867 F.2d at 892 (supplementing prior decision and finding grant of stay pending arbitration not appealable under then-numbered § 15 of the FAA).

In *Tejidos de Coamo, Inc. v. International Ladies' Garment Workers' Union*, 22 F.3d 8, 10 (1st Cir. 1994), even though the FAA expressly excludes employment contracts from its scope and so the labor dispute at issue was not properly subject to § 16, the First Circuit looked to the strong congressional policy in favor of immediate appeal of denials of arbitration that led to § 16's enactment. The First Circuit accepted the distinction based on proarbitration policy that decisions favoring arbitration are considered appealable injunctions under § 1292(a) while decisions disfavoring arbitration are not. *Tejidos*, 22 F.3d at 10-11. Accordingly, the First Circuit held that even where § 16 of the FAA is not formally applicable to a particular order staying arbitration, such order is immediately appealable as denial of an injunction under § 1292(a)(1). *Id.* at 11.

This Court has already agreed with the First Circuit that district court decisions favorable to arbitration, such as orders compelling arbitration and grants or denials of stays of legal proceedings pending arbitration of claims found arbitrable, are not appealable as injunctions under § 1292(a). *Adams v. Georgia Gulf Corp.*, 237 F.3d 538, 542 (5th Cir. 2001); *Jolley v. Paine Webber Jackson & Curtis, Inc.*, 864 F.2d 402, 403-04 (5th Cir. 1989), *supplemented*, 867 F.2d 891 (5th Cir. 1989). This Court has also held that a denial of a stay pending arbitration, where the district court had not yet ruled on the arbitrability of the

dispute, was not appealable under § 1292(a)(1). *Rauscher Pierce Refsnes, Inc. v. Birenbaum*, 860 F.2d 169, 171 (5th Cir. 1988). However, post-*Tai Ping*, *City of Meridian*, *Sedco*, and *National Iranian Oil*, and post-§ 16 enactment, we have not yet held that decisions ruling against arbitration, not formally subject to § 16, are otherwise directly appealable as interlocutory injunctions under § 1292(a)(1).

Though the district court here determined that the arbitration clause in Dahiya's deed did not fall under the Convention due to its invalidity under Louisiana law, this does not change the fact that Appellants sought an injunction favoring the enforcement of arbitration, which the district court refused. As explained earlier, this denial entails serious and potentially irreparable effects. Therefore, I would find the reasoning and analysis of *Tejidos* persuasive. Thus, even though here direct appealability would not otherwise be formally available under § 16(a)(1)(A) or § 16(a)(1)(C) of the FAA and the Convention, the district court's refusal to grant Appellants' motion to compel arbitration and stay proceedings pending arbitration should be appealable as an interlocutory denial of an injunction under § 1292(a)(1).

## II. **The district court erred in denying Appellants' motion to compel arbitration and stay proceedings.**

Because of what I feel to be the tremendous importance of the issues this case presents not only on the question of reviewability

but also on the merits, I address those merits here. This Court reviews a district court's refusal to compel arbitration and stay litigation *de novo*. **Cargill Ferrous Int'l v. SEA PHOENIX MV**, 325 F.3d 695, 697 (5th Cir. 2003). Likewise, the enforceability of a forum selection clause is a question of law that we review *de novo*. **Haynsworth v. The Corporation**, 121 F.3d 956, 961 (5th Cir. 1997) (citation omitted).

## A. Presumption of validity of forum selection clauses[15] under *M/S BREMEN v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972).

The Supreme Court in **The BREMEN** found that forum selection clauses in international agreements "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." 407 U.S. at 10. One way to show a clause unreasonable is if enforcement of the forum selection clause at issue "would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." **Id.** at 15. But the party resisting the clause must meet a "heavy burden of proof." **Id.** at 17.[16] Here, the district court agreed with Dahiya's contention that

---

[15]The Supreme Court and the Fifth Circuit have explicitly declared "foreign arbitration clauses are but a subset of foreign forum selection clauses in general." **Haynsworth v. The Corporation**, 121 F.3d 956, 963 (5th Cir. 1997) (quoting **Vimar Seguros y Reaseguros, S.A. v. M/V SKY REEFER**, 515 U.S. 528, 534 (1995)).

[16]The Supreme Court has enforced every forum selection clause in an international contract that has come before it. *See* **M/V SKY REEFER**, 515 U.S. 528, 540-42 (1995); **Carnival Cruise Lines, Inc. v. Shute**, 499 U.S. 585, 595 (1991); **Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.**, 473 U.S. 614,

the forum selection clause in his employment deed is unreasonable under *The BREMEN*, and therefore unenforceable, because enforcement of Section II.8 of Dahiya's deed would violate strong public policy of Louisiana.

Appellants argue that Louisiana law is completely inapposite. However, this Court in *Haynsworth*, 121 F.3d at 965-69, has considered Texas public policy while affirming the enforceability of a forum selection clause in certain investors' agreements with a foreign underwriting exchange. The investors had argued, in part, that the clause was unreasonable per *The BREMEN* because it contravened Texas public policy as embodied in Texas securities laws and the Texas Deceptive Trade Practices Act ("DTPA"). There, we decided that the investors did not overcome the strong presumption of enforceability established by *The BREMEN*. *Haynsworth*, 121 F.3d at 966-69. Dahiya claims that Louisiana public policy as expressed in La. R.S. § 23:921 overcomes the strong presumption of enforceability established by *The BREMEN* of the arbitration clause in his deed with Neptune.

There would appear to be two competing policy interests here. By enacting § 23:921, the Louisiana legislature has expressed its concern that in order for forum selection and choice of law clauses in employment contracts to be valid, employees must ratify them subsequent to the incidents giving rise to the claims. La. R.S.

---

640 (1985); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519-20 (1974).

§ 23:921A(2) (West 2004). The Louisiana Supreme Court, in **Sawicki v. K/S STAVANGER PRINCE**, 802 So. 2d 598, 603 (La. 2001), stated that the statutory requirement that employees agree to the forum (arbitration versus court, or choice of court) and the law to be applied after the fact of their injury or dispute occurs reflects Louisiana's strong public policy concerning forum selection clauses. *See also* **Lim v. Offshore Specialty Fabricators, Inc.**, No. Civ.A. 02-2126, 2003 WL 193518, at *2 (E.D. La. Jan. 28, 2003) (unpublished) ("Louisiana has expressed its hostility to forum selection clauses . . . .").[17]

However, the federal policy indicated by the Supreme Court in **The BREMEN** pulls in the opposite direction entirely. In **The BREMEN**, the ship at issue "was to traverse the waters of many jurisdictions. . . . That the accident occurred in the Gulf of Mexico and the barge was towed to Tampa in an emergency were mere fortuities." 407 U.S. at 13. The Court explained that the international contracting parties wanted to provide a neutral forum beforehand, so that there would be no question as to what would happen in case of a dispute. **Id.** This strong federal policy

---

[17]**Lim v. Offshore Specialty Fabricators, Inc.**, No. Civ.A. 02-2126, 2003 WL 193518 (E.D. La. Jan. 28, 2003) (unpublished), is currently awaiting disposition in this Court. I mention first, that the panel in **Lim** does not face the § 1447(d) remand bar to appellate jurisdiction to address the merits of the validity of the arbitration clause at issue there under the Convention, which the majority feels was encountered here; and second, that the merits questions in that case as to the application of **M/S BREMEN v. Zapata Off-Shore Co.**, 407 U.S. 1 (1972), and the preemption of Louisiana law hostile to arbitration by the FAA and the Convention are virtually identical to those in the instant case.

regarding the validity of pre-dispute selections of forum arises from "sensitivity to the need of the international commercial system for predictability in the resolution of disputes." *Sedco*, 767 F.2d at 1149 (citation omitted). This Court must also recognize the related, strong federal policy in favor of rigorously enforcing the specific forum choice of arbitration and arbitration awards, as reflected by Congress in enacting the FAA and the Convention. *See Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974).

Predictability in the resolution of disputes is precisely what Appellants desired and what Dahiya expressly agreed to in his deed here, and precisely what § 23:921 conflicts with and frustrates. If an accident or incident were to occur during and relating to Dahiya's training and employment under Neptune, notwithstanding in which body of water, Section II.8 of Dahiya's deed clearly anticipated the procedure to be followed – arbitration in either India or Singapore before a specific arbitrator who would apply Indian arbitration law. That this incident occurred in international waters near Louisiana and Dahiya received emergency treatment in Louisiana are "mere fortuities" because Dahiya and Neptune had already agreed to submit to arbitration elsewhere.

Section 23:921 works to presumptively void all arbitration clauses in employment contracts, no matter what their terms dictate. Not only does this policy directly conflict with *The*

*BREMEN*'s presumption of validity for forum selection clauses in general, but it conflicts with the proarbitration policy set out by Congress in the FAA and the Convention that similarly presumes arbitration provisions to be "valid, irrevocable, and enforceable." 9 U.S.C.A. § 2 (West 2004). The presumption of validity of arbitration clauses is also what another public policy of Louisiana heavily favors, as evidenced by its legislature's enactment of La. R.S. § 9:4201, which closely mirrors § 2 of the FAA. *See id.;* La. R.S. § 9:4201 (West 2004). Thus, Louisiana's general policy on arbitration is consistent with federal policy that arbitration clauses should be considered presumptively valid.

Given the relative weight of these competing policy concerns, I would find Dahiya has not met his heavy burden of showing that the forum selection clause in his deed is unreasonable, and the district court erred in concluding Dahiya had made such a showing.

B. **Preemption of state statutes invalidating arbitration agreements.**

In addition, any argument that the arbitration clause in Dahiya's deed is foreclosed by La. R.S. § 23:912 must be tried and tested by preemption analysis. Federal statutes enacted pursuant to the United States Constitution are the supreme law of the land. "[A]ny state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992) (citation omitted). Section 2 of the FAA, enacted by

Congress pursuant to the Commerce Clause and incorporated by the Convention in 9 U.S.C. § 208, "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone*, 460 U.S. at 24.

In *Southland* the Supreme Court held that the FAA preempts conflicting state law and concluded that even state courts cannot apply state statutes which invalidate arbitration agreements. 465 U.S. at 16.[18] The Court determined that the no-waiver provision of the California Franchise Investment Law, which required judicial consideration of claims brought under the law, *see* Cal. Corp. Code § 31512, directly conflicted with the FAA and violated the Supremacy Clause. *Id.* This Court has closely adhered to *Southland* in its decisions.

For example, in *Commerce Park at DFW Freeport v. Mardian Construction Co.*, 729 F.2d 334, 337 (5th Cir. 1984), the real estate partnership plaintiff contended that the DTPA's no-waiver provision, *see* Tex. Bus. & Com. Code Ann. § 1742, precluded the resolution of DTPA claims by arbitration because it reserved such claims to a judicial forum. We noted that the broad arbitration clause in the franchise agreement in *Southland* was similar to that found in the construction contract between the parties in *Commerce*

---

[18]The Supreme Court affirmed its decision regarding the FAA's preemption of state law in *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995), and *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265 (1995).

***Park***.  729 F.2d at 337-38.  Thus, we found ***Southland*** dispositive, and held that the no-waiver provision of the DTPA would abrogate § 2 of the FAA and thus violated the Supremacy Clause.  ***Id.*** at 338.[19]

Likewise, in ***OPE International LP v. Chet Morrison Contractors, Inc.***, 258 F.3d 443, 447 (5th Cir. 2001), this Court found that La. R.S. § 9:2779, which voided as against public policy any provision in certain construction contracts that required a suit or arbitration be brought outside Louisiana, was preempted by the FAA.  There, because the Louisiana statute conditioned the enforceability of arbitration agreements on selection of a Louisiana forum, a requirement not applicable to contracts generally, we found § 9:2779 in direct conflict with § 2 of the FAA.  ***OPE Int'l***, 258 F.3d at 447.

The Convention was negotiated in 1958 and entered into by the United States in 1970 pursuant to the Constitution's Treaty power.  9 U.S.C.A. § 201 note (West 2004).  That same year Congress adopted enabling legislation, 9 U.S.C. § 201 *et seq.*, to make the Convention "the highest law of the land."  ***Id.***; ***Sedco***, 767 F.2d at

_____

[19]*See also* ***Saturn Distrib. Corp. v. Paramount Saturn, Ltd.***, 326 F.3d 684, 687 (5th Cir. 2003) (noting under ***Southland Corp. v. Keating***, 465 U.S. 1 (1984), that to extent Tex. Rev. Civ. Stat. Ann. art. 4413(36) §§ 1.02 and 3.01(a), now repealed, gave Texas Motor Vehicle Board exclusive jurisdiction over franchise disputes, statute would be preempted by the FAA because it limited availability of arbitration); ***Miller v. Public Storage Mgmt., Inc.***, 121 F.3d 215, 219 (5th Cir. 1997) (applying ***Southland*** and holding the FAA preempts conflicting state anti-arbitration laws); ***Ommani v. Doctor's Assocs., Inc.***, 789 F.2d 298, 299-300 (5th Cir. 1986) ("[T]o the extent that [the Texas Deceptive Trade Practices Act] provides a remedy parallel to and often overlapping claims that may fall within the scope of the Federal Arbitration Act, we find the ***Southland*** decision clearly apposite.").

1145. As a ratified international treaty, the Convention, with its incorporated FAA provisions, also preempts any state law which would invalidate arbitration agreements.[20]

Here, the Louisiana statute cited by Dahiya and relied on by the district court, La. R.S. § 23:921, presumptively voids any choice of forum or choice of law clause in any employment contract unless expressly ratified by the employee after the occurrence of the subject of the action. This *ex post facto* approval requirement directly conflicts with § 2 of the FAA, which presumes written provisions for arbitration to be "**valid, irrevocable, and enforceable**, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2 (West 2004) (emphasis added).

By enacting § 2 of the FAA, incorporated by the Convention in 9 U.S.C. § 208, "Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed upon the same footing as other contracts." ***Doctor's Assocs., Inc. v. Casarotto***, 517 U.S. 681, 687

---

[20]Where there is a conflict between a treaty and the provisions of a state constitution or of a state statute, the treaty will control. ***Zschernig v. Miller***, 389 U.S. 429, 440-41 (1968); ***Clark v. Allen***, 331 U.S. 503, 508 (1947); *see, e.g., **David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)***, 923 F.2d 245, 250 (2d Cir. 1991) (finding the FAA and the Convention preempted a Vermont statute that required any agreement to arbitrate be displayed prominently in the contract or contract confirmation and be signed by the parties); ***F.A. Richard & Assocs., Inc. v. Gen. Marine Catering Co., Inc.***, 688 So. 2d 199, 201-02 (La. Ct. App. 1997) (finding the Convention preempted La. R.S. § 22:629 that prohibited enforcement of insurance contract provisions which would divest Louisiana courts of jurisdiction over insurance actions).

(1996) (finding a Montana statute that voided arbitration clauses unless they were typed in underlined capital letters to be preempted by the FAA) (internal quotations and citations omitted).

Therefore, because § 23:921 targets forum selection clauses in employment contracts and regards them as suspect, I would find § 23:921 preempted by both the FAA and the Convention, at least as applied to employment agreements containing arbitration clauses. Thus, I would hold the district court erred by concluding § 23:921 invalidated the arbitration clause in Dahiya's deed.

C.   **The arbitration clause in Dahiya's deed and the Convention.**

It is clear that both Congress, in enacting the FAA and the Convention, and the Supreme Court, in interpreting their application to arbitration agreements, have expressed a liberal federal policy favoring the enforcement of arbitration provisions. *See* **Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.**, 473 U.S. 614, 625 (1985) (citation omitted).  This strong presumption in favor of arbitration "applies with special force in the field of international commerce." **Id.** at 631.  In light of the strong federal policy favoring arbitration, courts are to conduct a "very limited inquiry" when deciding whether to compel arbitration pursuant to the Convention.  **Francisco v. STOLT ACHIEVEMENT MT**, 293 F.3d 270, 273 (5th Cir. 2002) (citation omitted).

Thus, this Court has outlined a simple four-step analysis for courts to perform: whether "(1) there is an agreement in writing to arbitrate the dispute, (2) the agreement provides for arbitration in the territory of a Convention signatory, (3) the agreement arises out of a commercial legal relationship, and (4) a party to the agreement is not an American citizen." *Id.* (citing *Sedco*, 767 F.2d at 1144-45). Once an arbitration agreement is found to fall under the Convention, the district court is authorized by 9 U.S.C. § 206 to order arbitration pursuant to the parties' agreement, within or outside the United States. In fact, the Convention mandates that courts order arbitration. *Francisco*, 293 F.3d at 273 (citation omitted); *see also* *Sedco*, 767 F.2d at 1145, 1151 ("9 U.S.C. § 206 does not confer discretion in compelling arbitration."). I would find that Dahiya's arbitration clause easily meets all four requirements of the Convention and that the district court erred in not compelling arbitration and staying the proceedings per Appellants' motion.

For the Convention to apply, there must be an agreement in writing to arbitrate the dispute. *Francisco*, 293 F.3d at 273. This Circuit has already decided in *Sphere Drake Insurance PLC v. Marine Towing, Inc.*, 16 F.3d 666, 669 (5th Cir. 1994), that the Convention's definition of "agreement in writing" includes "either (1) an arbitral clause in a contract or (2) an arbitration agreement, (a) signed by the parties or (b) contained in an

35

exchange of letters or telegrams." The signature or exchange of letters qualification only applies to arbitration agreements, not arbitration clauses found within contracts. *Id.; see also Francisco*, 293 F.3d at 273 (determining that a Filipino seaman who had signed an employment contract containing an arbitration clause was enough to constitute an agreement in writing to arbitrate the dispute per the Convention).

Here, seaman Dahiya signed a deed covering his 12 months of practical training at-sea, which time would be applied to his three-year Diploma in Maritime Studies. He also agreed in the deed to serve as an employee to Neptune or a company of Neptune's choosing for a bonded period of two years after receiving his degree and passing his Class V exam. Though Dahiya is correct in saying that Neptune did not explicitly sign the deed, Section I.16 of the deed specifies that the company – Neptune – "covenants on its part to cause the Engine Cadet to be trained in the business of Marine Engineering and duties of an Engine Cadet onboard the company's ships and provide the Cadet with sufficient board[.]" Section I.17 outlined how much Neptune would pay Dahiya as "wages" for the two years remaining before receiving his degree – the first consisting of his at-sea training and the second year consisting of his attendance of classes at the National Maritime Academy in

Singapore. Because both sides exchanged promises in the deed, it functioned as an employment contract.[21]

Like the seaman in *Francisco*, Dahiya signed an employment deed that contained an express arbitration clause. Section II.8 of Dahiya's deed provided:

> Any dispute arising out of this Agreement shall be subject to Arbitration under the Arbitration and Conciliation Act, 1996. The said proceedings shall take place either in Singapore or in India at the option of the Company. Capt. Karanjit Singh, A 64/3, SFS Flats, Saket, New Delhi, shall be appointed as the arbitrator in these proceedings.

This deed was, as in *Sphere Drake* and *Francisco*, a contract between Neptune and Dahiya that indisputably contained an arbitral provision whereby "[a]ny dispute arising from [Dahiya's deed] shall be subject to Arbitration." Thus, no signature was required; the arbitration clause found within Dahiya's deed constitutes an agreement in writing under the Convention.[22]

---

[21]In its October 11, 2002, Order and Reasons, the district court stated: "Dahiya signed an employment contract before starting work on the EAGLE AUSTIN." Dahiya's deposition testimony also indicates that he understood the deed document he signed to govern his employment aboard the EAGLE AUSTIN and that Neptune was his employer.

[22]I do not pursue a discussion of Dahiya's remaining defense to arbitration, that nonsignatories of an agreement cannot compel arbitration. Suffice to say, this defense fails entirely as to Neptune, *see Sphere Drake Insurance PLC v. Marine Towing, Inc.*, 16 F.3d 666, 669-70 (5th Cir. 1994), because Neptune was a party to Dahiya's employment contract containing the arbitration clause. However, should Dahiya be able to show that the rest of Appellants do not meet either requirement under *Westmoreland v. Sadoux*, 299 F.3d 462, 467 (5th Cir. 2002), allowing nonparties to an agreement to compel arbitration, Dahiya's defense as to them would succeed.

Dahiya also argues that this tort suit is not a dispute covered by the scope of the arbitration clause.[23] He alleged in his original petition that at the time of his injuries, "[o]n or about November 13, 1999, [Dahiya] was serving aboard the M.T. EAGLE AUSTIN as an Assistant Engineer in the employ of defendants." The deed's arbitration clause, Section II.8, clearly provided for arbitration for "[a]ny dispute arising out of this Agreement" without limitation. Thus, as we outlined in **Francisco**, 293 F.3d at 278, although Dahiya's deed allowed a remedy for work-related personal injuries, the similarly broad language of Section II.8 covers this tort dispute arising from injuries Dahiya sustained on the EAGLE AUSTIN during his on-board training pursuant to his employment "Agreement." Accordingly, I would find the first requirement met.

The second requirement for the Convention to apply is that the agreement must provide for arbitration in the territory of a Convention signatory. **Francisco**, 293 F.3d at 273. Dahiya's deed explicitly provides for arbitration, which clause (as explained above) the district court erroneously found to be invalid. As for the location of such arbitration, the clause provides for arbitration proceedings to take place in either India or Singapore. In 1960, India acceded to the Convention; in 1986, Singapore

---

[23]Generally, whenever the scope of an arbitration clause is in question, courts are to construe the clause in favor of arbitration. *See* **Mitsubishi**, 473 U.S. at 626.

acceded to the Convention. 9 U.S.C.A. § 201 note (West 2004). Therefore, I would find the second requirement met.

The third requirement for the Convention to apply is that the agreement arises out of a commercial legal relationship. *Francisco*, 293 F.3d at 273. After detailed analysis in *Francisco*, this Court held seaman employment contracts to be commercial legal relationships covered by the Convention, even though they are excepted by the FAA. *Id.* at 274-75. Therefore, I would find the third requirement met.

The final requirement for the Convention to apply is that there must be a party to the agreement who is not an American citizen. *Id.* at 273. It is clear that Dahiya himself is not an American citizen but an Indian citizen. Further, the other party to the deed, Neptune, is not an American corporation but a Singapore corporation. Thus, I would find the fourth requirement met.

All four requirements having been met here, I would find the arbitration agreement in Dahiya's deed satisfies the very limited, "low bar" inquiry Congress intended courts to apply when determining whether arbitration agreements fall under the Convention. *See Beiser*, 284 F.3d at 674 ("[E]asy removal is exactly what Congress intended in § 205."). The district court clearly erred when it refused to compel arbitration and stay proceedings under the Convention per Appellants' motion.

39