[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-12765

_____

DARRYL A. VACHON,

Plaintiff-Appellee,

*versus*

TRAVELERS HOME AND MARINE INSURANCE COMPANY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:20-cv-01201-TPB-SPF

_____

Before WILLIAM PRYOR, Chief Judge, LAGOA, Circuit Judge, and WATKINS,[*] District Judge.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether we have appellate jurisdiction over an order that remanded a case to state court because of an untimely notice of removal. Because federal law bars us from reviewing orders remanding cases based on a defect in removal, *see* 28 U.S.C. § 1447(d), we lack jurisdiction. So we dismiss this appeal.

## I. BACKGROUND

Darryl Vachon, a citizen of Florida, was involved in a car accident in 2011. After the other driver's insurance did not cover all of Vachon's damages, Vachon sought to recover the balance from Travelers Home and Marine Insurance Company, his provider of "uninsured/underinsured" insurance coverage. Travelers refused to pay.

In March 2013, Vachon sued Travelers in a Florida court. Travelers, a citizen of Connecticut, could not remove the action to federal court because Travelers's "maximum coverage exposure under the . . . policy it issued was $25,000," which is below the minimum amount in controversy necessary to invoke diversity jurisdiction. *See* 28 U.S.C. § 1332(a) ("The district courts shall have

---

[*] Honorable W. Keith Watkins, United States District Judge for the Middle District of Alabama, sitting by designation.

original [diversity] jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000[.]").

At trial in January 2020, the jury determined that Vachon had incurred $1,022,780 in damages, and the state court awarded Vachon $25,000, the policy maximum. *See Nationwide Mut. Fire Ins. Co. v. Voigt*, 971 So. 2d 239, 242 (Fla. Dist. Ct. App. 2008) ("[W]hen no dispute exists as to the policy limits . . . , the trial court should . . . grant an insurer's motion to limit the judgment to the policy limits."). Under Florida law, a plaintiff who recovers from his insurance company in an underinsurance suit may bring a claim against the company for "[n]ot attempting in good faith to settle [the original underinsurance] claim[.]" FLA. STAT. § 624.155(b)(1). As part of this "bad faith" claim, the plaintiff may seek "any damages" reflected in the jury verdict "in excess of the policy limits." *Fridman v. Safeco Ins. Co. of Ill.*, 185 So. 3d 1214, 1222 (Fla. 2016). In its final judgment, the state court "reserve[d] jurisdiction to determine the Plaintiff's right to amend his Complaint to seek and litigate bad faith damages from the Defendant as a result of [the] jury verdict in excess of policy limits." *See id.* at 1229 (permitting state courts to retain jurisdiction for that purpose after entering judgment).

In April 2020, Vachon moved to amend his complaint to add a bad faith claim. Travelers argued that the court should require Vachon to file a separate lawsuit to recover additional damages because the company could "los[e] the opportunity to pursue removal" to federal court if Vachon was permitted to amend his

complaint. The state court granted Vachon's motion on April 27. The same day, Vachon filed an amended complaint containing a new claim for "[s]tatutory [b]ad [f]aith," and seeking "the total damages suffered by [Vachon]." Because the value of the action now "exceed[ed] the sum or value of $75,000," Travelers removed the lawsuit to federal court on May 26, 2020, based on diversity jurisdiction. 28 U.S.C. § 1332(a); *see also id.* § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . may be removed [to federal district court].").

Vachon moved to remand on the ground that removal was untimely because Travelers had not filed its notice of removal within "1 year after commencement of the action" in March 2013. *Id.* § 1446(c)(1). Travelers responded that the one-year period for removal restarted when Vachon amended his complaint because "a bad faith claim is separate, distinct, and does not exist until the conclusion of an underlying [underinsurance] claim." Travelers also argued that it would violate the Supremacy Clause to permit Vachon to "manipulate[] rules of procedure to prevent Travelers from removing an otherwise removable case to federal court."

The district court granted the motion to remand because "[section] 1446 as drafted" required it to treat the one-year removal period as having run from the date Vachon filed his first complaint in 2013. Travelers timely appealed, and we requested additional briefing about our jurisdiction. *See* 28 U.S.C. § 1447(d).

## II. STANDARD OF REVIEW

"We review our appellate jurisdiction *de novo.*" *Overlook Gardens Props., LLC v. ORIX USA, L.P.*, 927 F.3d 1194, 1198 (11th Cir. 2019).

## III. DISCUSSION

Travelers argues that it timely removed the case from state court, but we lack jurisdiction to consider that issue in this appeal. "[T]he existence of appellate jurisdiction in a specific federal court over a given type of case is dependent upon authority expressly conferred by statute." *Carroll v. United States*, 354 U.S. 394, 399 (1957). Ordinarily, courts of appeals "have jurisdiction of appeals from all final decisions of the district courts." 28 U.S.C. § 1291. An order of remand is a final decision, *see In re Bethesda Mem'l Hosp., Inc.*, 123 F.3d 1407, 1408 (11th Cir. 1997), but Vachon argues that we lack jurisdiction because Congress has proscribed appellate review of certain orders remanding cases to state court, *see* 28 U.S.C. § 1447(d).

Section 1447(d) deprives us of jurisdiction over this appeal. It provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." *Id.* Despite the broad statutory language, the Supreme Court has explained that section 1447(d) strips courts of appeals of jurisdiction to review only those orders remanding for one of the two reasons identified in section 1447(c)—"a lack of subject matter jurisdiction or a defect in removal procedure." *BP P.L.C. v. Mayor*

*of Balt.*, 141 S. Ct. 1532, 1541 (2021); *see also* 28 U.S.C. § 1447(c). All "other remand orders remain appealable." *BP P.L.C.*, 141 S. Ct. at 1541. "[U]ntimely removal," the basis of the remand order here, is "precisely the type of removal defect contemplated by [section] 1447(c)." *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 128 (1995). So "[s]ection 1447(d) . . . compels the conclusion" that we lack jurisdiction over the appeal. *Id.* And because we lack jurisdiction, we may do no more than "announc[e] the fact and dismiss[] the cause." *United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).

Travelers agrees that this Court ordinarily has no jurisdiction to consider an appeal from a remand order, but it argues that we have jurisdiction under the so-called "matter of substantive law" exception to subsection (d). *Aquamar S.A. v. Del Monte Fresh Produce N.A., Inc.*, 179 F.3d 1279, 1286 (11th Cir. 1999) (internal quotation marks omitted). This judge-made exception permits appellate review of a remand order "that determines the substantive issues of the case in a way that is conclusive because it is unreviewable by the state court." *Id.* It is unclear what aspect of "[t]he judicial Power of the United States," U.S. CONST. art. III, § 1, authorizes us to carve out exceptions to Congress's lawful restriction of our jurisdiction, *see Sheldon v. Sill*, 49 U.S. (8 How.) 441, 449 (1850) ("The political truth is, that the disposal of the judicial power . . . belongs to Congress." (internal quotation marks omitted)). But, in any event, the exception is inapplicable.

Travelers contends that the district court determined substantive issues when it "calculat[ed] . . . the one-year removal period based entirely upon an interpretation of Florida law as to whether an amended pleading relates back to the filing date of the original claim," but the remand order did not mention the Florida relation-back rules. Instead, the district court adopted the "reasoning and analysis" of decisions that interpreted the phrase "commencement of the action" in section 1446. *See Hawkinson v. State Farm Mut. Auto. Ins. Co.*, 325 F. Supp. 3d 1293, 1298 (M.D. Fla. 2018); *Fla. Health Scis. Ctr., Inc. v. Gov't Emps. Ins. Co.*, No. 8:17-cv-339-T-36AAS, 2017 WL 3720880, at *6 (M.D. Fla. Aug. 7, 2017). And "there is no reason to believe that the [d]istrict [c]ourt's remand was actually based on th[ese] . . . unmentioned" relation-back rules because "it does not appear from the record that [the parties] ever even [addressed]" them in the district court. *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 235 (2007).

Moreover, Travelers has not explained how the findings about the start-date of the removal period will have any effect on the litigation on remand, much less a "*conclusive* effect upon the state court action." *Aquamar*, 179 F.3d at 1286 (emphasis added); *cf. Glasser v. Amalgamated Workers Union Loc. 88*, 806 F.2d 1539, 1541 (11th Cir. 1986) (concluding that "[t]he appellants' substantive rights . . . [were] not affected" because the state court on remand "c[ould] proceed to hear the case"). "Because the district court's order of remand . . . did not resolve any substantive issues,"

*Aquamar*, 179 F.3d at 1285, we conclude that the matter of substantive law exception does not apply.

We would lack jurisdiction even if the order contained some determination of substantive law because the matter of substantive law exception is inapplicable when "the substantive issue is intrinsic to the district court's decision to remand." *Calderon v. Aerovias Nacionales de Colom.*, 929 F.2d 599, 602 (11th Cir. 1991). Assuming substantive Florida law played a part in the district court's calculation of the removal period, any determination about that law "was merely a step towards the conclusion that" the removal was untimely. *In re Loudermilch*, 158 F.3d 1143, 1146 (11th Cir. 1998). So the substantive issue would have been intrinsic to the decision to remand.

## IV. CONCLUSION

We **DISMISS** the appeal for lack of jurisdiction.

20-12765          WILLIAM PRYOR, C.J., concurring                    1

WILLIAM PRYOR, Chief Judge, joined by LAGOA, Circuit Judge, concurring:

Because we lack jurisdiction, we dismiss the appeal without determining whether the district court correctly interpreted the one-year statutory deadline for removal to federal court, *see* 28 U.S.C. § 1446(c)(1). I write separately to explain why, if we had jurisdiction, I would affirm the remand order. The plain meaning of section 1446 is clear: The one-year period for a defendant to remove an action to federal court begins when the plaintiff files his complaint in state court, not when he amends his complaint to add a new claim years later. Travelers filed its notice of removal six years too late.

Section 1446 governs the removal of "civil action[s] from a State court" to federal court. *Id.* § 1446(a). Ordinarily, a defendant must file a "notice of removal of a civil action or proceeding . . . within 30 days after" his receipt "of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." *Id.* § 1446(b)(1). But "if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after" the defendant receives "a copy of an amended pleading, motion, order[,] or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3). Subsection (b) further provides that it is subject to "subsection (c)." *Id.* And subsection (c) provides that "[a] case may not be removed under subsection (b)(3) on the basis of"

2            WILLIAM PRYOR, C.J., concurring            20-12765

diversity jurisdiction "more than one year after commencement of the action." *Id.* § 1446(c)(1).

Under the plain meaning of section 1446, Travelers's notice of removal was untimely. *Cf. United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc) ("In construing a statute we must begin, and often should end as well, with the language of the statute itself." (internal quotation marks omitted)). In this context, an "action" means "a lawsuit." *Action*, OXFORD ENGLISH DICTIONARY (online ed.). So the "commencement of [an] action," 28 U.S.C. § 1446(c)(1), is "[t]he time at which" the lawsuit "begin[s], typically with the filing of a formal complaint." *Commencement of an Action*, BLACK'S LAW DICTIONARY (11th ed. 2019); *cf.* FLA. R. CIV. P. 1.050 ("Every action of a civil nature shall be deemed commenced when the complaint or petition is filed[.]"). Vachon commenced his lawsuit against Travelers in 2013 by filing his original complaint. Ordinarily, Travelers would have had 30 days after receiving the "initial pleading"—that is, the 2013 complaint—to file a notice of removal. *See* 28 U.S.C. § 1446(b)(1). But the "case stated by the initial pleading [was] not removable," so Travelers was entitled, "[e]xcept as provided in subsection (c)," to file a notice of removal "within thirty days after [its] receipt . . . of a copy of [the] amended pleading . . . from which it [could] first be ascertained that the case [was] one which . . . ha[d] become removable"—that is, the amended complaint. *Id.* § 1446(b)(3). Travelers filed a notice of removal in May 2020, within thirty days of receiving the amended complaint. But because Travelers attempted to "remove[] under

20-12765          WILLIAM PRYOR, C.J., concurring          3

subsection (b)(3) on the basis of [diversity] jurisdiction . . . more than 1 year after commencement of the action" in 2013, its notice of removal was untimely. *Id.* § 1446(c)(1).

Travelers argues that "action" is synonymous with "claim" and that Vachon commenced a new action when he advanced his claim of bad faith in 2020, but this argument fails to account for the ordinary meaning of those terms. A "claim" is "[a] demand for money, property, or a legal remedy." *Claim*, BLACK'S LAW DICTIONARY. Because an action may involve more than one such demand, we have explained that "a particular claim" is "a portion of a plaintiff's lawsuit," *Perry v. Schumacher Grp. of La.*, 891 F.3d 954, 958 (11th Cir. 2018) (emphasis omitted), while "an action . . . refers to the whole case," *Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1236 (11th Cir. 2020) (William Pryor, C.J., concurring) (internal quotation marks omitted); *see Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371, 1376 (5th Cir. 1980) (concluding that "civil action," 28 U.S.C. § 1441(d), "denotes the entirety of the proceedings in question," "not simply claims").

Section 1446 employs this distinction. For example, subsection (b) refers to an "initial pleading setting forth the claim for relief upon which such action . . . is based." 28 U.S.C. § 1446(b)(1). That provision would make little sense if "action" and "claim" were synonymous. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS § 26, at 174 (2012) ("[No provision] should needlessly be given an interpretation that causes it to duplicate another provision or to have no

4                    WILLIAM PRYOR, C.J., concurring                    20-12765

consequence."). And because "[a] word or phrase is presumed to bear the same meaning throughout a text," *id.* § 25, at 170, it follows that an "action" in subsection (c) is similarly distinct from a "claim," *cf. Arango*, 621 F.2d at 1376 (interpreting "civil action" in section 1441(d) in the light of "[t]he same phrase in the remaining subsections of [section] 1441"). The amendment of Vachon's complaint in 2020 to include a claim of bad faith did not constitute the commencement of a new action. It was no more than the latest development in an action that Vachon commenced in 2013.

Travelers mentions that "a statutory bad faith claim is separate and independent of the [underinsurance] claim" under Florida's relation-back rules, but this observation is irrelevant. The degree of relationship between two claims does not tell us whether those claims were filed as part of the same lawsuit. Nor is the treatment of bad faith claims under the Florida relation-back doctrine material. The doctrine addresses whether an amended complaint may be treated as filed on the date of the original complaint for purposes of state statutes of limitations. *See Relation Back*, BLACK'S LAW DICTIONARY. But section 1446 requires us to consider whether "an amended pleading" was filed "more than 1 year after commencement of the action," 28 U.S.C. § 1446(b)(3), (c)(1), not whether, under state law, "[a]n amended complaint raising claims for which the statute of limitations has expired can survive a motion to dismiss," *Palm Beach Cnty. Sch. Bd. v. Doe*, 210 So. 3d 41, 43–44 (Fla. 2017).

20-12765         WILLIAM PRYOR, C.J., concurring         5

To be sure, some district courts within our Circuit have treated a bad faith claim as its own action for purposes of subsection (c) on the basis "that the bad faith claim is a separate and distinct cause of action" from the underinsurance claim. *Johnson v. State Farm Mut. Auto. Ins. Co.*, No. 6:15-cv-1942-Orl-31TBS, 2016 WL 277768, at *2 (M.D. Fla. Jan. 22, 2016); *see, e.g., Thorne v. State Farm Mut. Auto. Ins. Co.*, No. 8:14-cv-827-T-17AEP, 2015 WL 809530, at *4–6 (M.D. Fla. Feb. 25, 2015); *Lahey v. State Farm Mut. Auto. Ins. Co.*, No. 8:06-cv-1949-T27-TBM, 2007 WL 2029334, at *2 (M.D. Fla. July 11, 2007). These district courts appear to have relied on an earlier version of the removal statute that permitted a defendant to remove the "entire case" "[w]henever a separate and independent claim or cause of action, which would be removable if sued upon alone, [was] joined with one or more otherwise nonremovable claims or causes of action." 28 U.S.C. § 1441(c) (1988); *see, e.g., Thorne*, 2015 WL 809530, at *4 (permitting removal of an individual claim in a multi-count complaint and observing that "[a] bad faith claim is a cause of action that is separate and independent of the underlying [underinsurance] claim"). But Congress repealed that provision in 2011. Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63 § 103(a)(4), 125 Stat. 758, 759. And the distinction the former provision drew between an "entire case" and an individual "claim" tends only to confirm that a claim is not the same as an action.

Travelers urges us to depart from the plain meaning of section 1446(c) because its inability to timely remove a bad faith claim

6                WILLIAM PRYOR, C.J., concurring                20-12765

"is an absurd result that cannot pass muster." Courts should not be in the business of rewriting legislation, so we apply the absurdity doctrine "only under rare and exceptional circumstances." *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930). That is, we may depart from the literal meaning of an unambiguous statute only where "a rational Congress," *BP P.L.C. v. Mayor of Balt.*, 141 S. Ct. 1532, 1542 (2021), "could not conceivably have . . . intended" the literal meaning to apply, *Logan v. United States*, 552 U.S. 23, 36 (2007) (internal quotation marks omitted).

No absurdity results here because the literal meaning of the text "is more than conceivable," *id.* at 37 (internal quotation marks omitted)—it is entirely sensible. The ordinary rule that a defendant must file a notice of removal within thirty days of receiving the initial complaint, *see* 28 U.S.C. § 1446(b)(1), ensures "early resolution of the court system in which the case will be heard," 14 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3731 (rev. 4th ed. 2021). But because a case might become removable only when a plaintiff amends his complaint, Congress has permitted the thirty-day period for removal to restart in this circumstance. *See* 28 U.S.C. § 1446(b)(3). Amendments to a complaint may occur at a late stage of the litigation, including at or after trial, when removal would be particularly disruptive. *See, e.g.*, FLA. R. CIV. P. 1.190(b) (permitting amendment of the pleadings "to conform to the evidence" at trial). So, by setting the latest date for removal at one year after commencement of the action, Congress has reduced the possibility of this kind of disruption. *See* 14 WRIGHT ET

AL., *supra*, § 3731 ("The time limit was included in order to reduce the opportunity for removal of diversity cases after substantial progress toward their resolution has been made in state court."). The plain meaning of section 1446(c)—and the result it compels here— is not absurd but instead reflects a "Congressional policy of avoiding interruption of the litigation of the merits of . . . causes, properly begun in state courts." *United States v. Rice*, 327 U.S. 742, 752 (1946).

To be sure, the one-year deadline "provides plaintiffs with an opportunity and an incentive to . . . prevent removal until the one-year period has passed, thereby defeating defendants' removal right," but this "potential negative impact" does not make the outcome absurd. 14 WRIGHT ET AL., *supra*, § 3731. "Congress may well have accepted [that impact] as the price of a uniform system of federal procedure." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 414 n.13 (2010) (plurality opinion). And even if Congress did not foresee the precise way subsection (c) would make removal difficult for defendants like Travelers, the absurdity doctrine does not give us license to fix "substantive errors arising from a drafter's failure to appreciate the effect of certain provisions," SCALIA & GARNER, READING LAW § 37, at 238. "We are not the final editors of statutes, modifying language when we perceive some oversight." *Tex. Brine Co. v. Am. Arb. Ass'n*, 955 F.3d 482, 486 (5th Cir. 2020). If Travelers is unhappy with section 1446 as it is currently written, "the remedy lies with Congress and not with the courts." *Chung Fook v. White,* 264 U.S. 443, 446 (1924).

Moreover, Congress amended section 1446 in 2011 to provide that the one-year deadline does not apply when "the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action," but Travelers did not rely on—or even mention—this amendment in the district court. 28 U.S.C. § 1446(c)(1); *see* Federal Courts Jurisdiction and Venue Clarification Act § 103(b)(3)(C). To be sure, Travelers asserted that Vachon, "by amending his [c]omplaint rather than filing a new . . . action, has manipulated rules of procedure to prevent [it] from removing an otherwise removable case to federal court." But Travelers made this assertion in support of its argument that it would violate the Supremacy Clause to afford "action" its plain meaning. Travelers did not ask the district court to find that Vachon had acted in bad faith. Because the parties did not brief the application of the amendment, I express no opinion about whether it might have applied in this case. But the possibility that Congress has already addressed Travelers's concerns supplies another reason to decline to rewrite the statute. *Cf. Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000) (en banc) ("We will not do to the statutory language what Congress did not do with it.").

Finally, Travelers argues that a determination that its removal was untimely would "deprive[] [it] of its substantive due process right to remove to federal court," but no such constitutional right exists. The Constitution leaves "to the wisdom of Congress the creation of lower federal courts." *Haywood v. Drown*, 556 U.S. 729, 746 (2009) (Thomas, J., dissenting); *see* U.S. CONST.

20-12765        WILLIAM PRYOR, C.J., concurring              9

art. III, § 1. And "[i]t is for Congress to say how much of the judicial power of the United States shall be exercised" by those inferior courts. *Plaquemines Tropical Fruit Co. v. Henderson*, 170 U.S. 511, 521 (1898). "Th[e] power of removal," which "is not to be found in express terms in any part of the [C]onstitution," is no exception. *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 349 (1816). Because Congress controls the jurisdiction of inferior courts, it has long been settled that "[t]he time, the process, and the manner" of removal is "subject to . . . absolute legislative control." *Id.* Congress exercised that control when it enacted section 1446(c). The subsection does not violate substantive due process. *Glob. Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1271 (11th Cir. 2004) ("A defendant's right to remove an action against it from state to federal court is purely statutory[.]" (internal quotation marks omitted)); *see also Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (explaining that a substantive due process right must be "deeply rooted in this Nation's history and tradition" (internal quotation marks omitted)).

Travelers asserts that federal courts have held that a denial of the "right to remove to federal court" is a "substantial [*sic*] due process injury," but the two circuit court decisions on which it relies do not bear out that assertion. In *McKinney v. Board of Trustees*, the Fourth Circuit interpreted an earlier version of the removal statute. 955 F.2d 924, 925–26 (4th Cir. 1992). At the time, the statute provided that the thirty-day period for filing a notice of removal ran from "receipt by the defendant . . . of a copy of the initial

pleading," 28 U.S.C. § 1446(b) (1988), but it was unclear how that provision applied when there were multiple defendants, *see McKinney*, 955 F.2d at 926. Our sister Circuit rejected the plaintiff's argument that service of the first-served defendant triggered the thirty-day period for all defendants, regardless of when those other defendants were served. *Id.* at 926–27. The Court explained that this interpretation would be "inequit[able]" to later-served defendants, and the Court did "not think that Congress, in providing for removal to federal court, intended to allow inequitable results." *Id.* at 927. The Court also considered it relevant that, if it were to accept the plaintiff's interpretation, "the rights of defendants [to remove] generally could be rather easily overcome by tactical maneuvering by plaintiffs." *Id.* at 928 (internal quotation marks omitted). But, the Fourth Circuit explained, because "Congress created the removal process to protect defendants," "[t]his [result] cannot be what Congress had in mind." *Id.* (internal quotation marks omitted). This Circuit too relied on "common sense and considerations of equity" to interpret the same provision, and we agreed that "[t]he first-served rule" was "inequitable to later-served defendants." *Bailey v. Janssen Pharmaceutica, Inc.*, 536 F.3d 1202, 1206 (11th Cir. 2008).

*McKinney* and *Bailey* were exercises in statutory interpretation, and neither the Fourth Circuit nor our Court considered removal to be a constitutional right. Neither decision described removal as anything other than a statutory entitlement, and neither decision mentioned *procedural* due process, much less its more

20-12765          WILLIAM PRYOR, C.J., concurring          11

controversial substantive counterpart. To the extent Travelers contends that we should consider "policy concerns" and whether a particular interpretation of section 1446 would produce an "inequit[y]," this contention fails for the same reason as Travelers's absurdity argument. Unlike the former subsection (b) at issue in *McKinney* and *Bailey*, the meaning of the current subsection (c) is clear.

The plain meaning of the statute compels the conclusion that Travelers's notice of removal was untimely, and "our job is to follow the text even if doing so will supposedly undercut a basic objective of the statute." *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 969 (11th Cir. 2016) (en banc) (alteration adopted) (internal quotation marks omitted). Because "[w]e are not at liberty to rewrite the statute to reflect a meaning we deem more desirable," *id.* at 970 (internal quotation marks omitted), I would decline Travelers's invitation to do so here if we had jurisdiction over this appeal.