[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-10397

_____

FU JING WU,
a.k.a. Leo Wu,

Plaintiff-Appellant,

*versus*

CHUN LIU,
individually and on behalf of all others
similarly situated,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

D.C. Docket No. 1:23-cv-21541-KMW

_____

Before WILLIAM PRYOR, Chief Judge, and GRANT and LUCK, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

Congress generally has barred appellate review of orders that remand actions to state court because of procedural defects or lack of subject-matter jurisdiction. *See* 28 U.S.C. § 1447(d). We must decide whether this jurisdictional bar covers a single order that both denied a motion to compel arbitration *and* remanded an action to state court for lack of subject-matter jurisdiction. Fu Wu and Wai Lam set up investment funds for aliens with promises of opportunities to immigrate to the United States. After Wu and Lam fraudulently diverted millions of those funds, an investor sued them in a Florida court. Wu and Lam removed the action to the district court and moved to compel arbitration. Their removal petition invoked a federal law, 9 U.S.C. § 205, that permits removal of actions that "relate[] to an arbitration agreement . . . falling under the [Convention on the Recognition and Enforcement of Foreign Arbitral Awards]." In a single order, the district court denied their motion to compel arbitration and remanded the action to state court for lack of subject-matter jurisdiction. Because section 1447(d) bars our review, we dismiss Wu and Lam's appeal.

# I. BACKGROUND

The Immigration and Naturalization Service tower sat like a mausoleum on Biscayne Boulevard in Miami, Florida. Empty since 2008, the building decayed even as the rest of Biscayne Boulevard prospered with new development. Fu Jing "Leo" Wu and his business partner, Wai Kin "Benny" Lam, designed a facelift for the tower. Their proposed Triton Center would replace abandoned offices with a new mixed-use condominium and a hotel.

Wu and Lam pitched their vision to Chinese investors who, like the tower visitors of old, hoped to immigrate to the United States. These Chinese nationals sought to use the EB-5 visa program, administered by the United States Citizenship and Immigration Services, to establish permanent residency. Under the program, foreign nationals receive a visa in exchange for a $500,000 or $1,000,000 investment in a commercial enterprise that creates at least 10 full-time, qualifying jobs. Visa eligibility depends on proper use of investor funds.

After the Triton Center project received the approval of Immigration Services sometime between 2009 and 2013, Wu and Lam began their promotion tour. To fund the project, investors like Chun Liu, a Chinese national, paid $500,000 in capital plus $50,000 in administrative and legal fees in exchange for one membership unit and percentage interest in Florida Immigration Building Funding, LLC, an entity founded by Wu in 2013. This initial offering raised approximately $50 million over several years. A purchase agreement with an arbitration clause provided the terms of the

offering. All told, Liu says that he and others sank a "collective sum of approximately $72 million" into the Triton Project.

Most of the funds never found their way to the Triton Center project. Instead, Wu and Lam allegedly diverted tens of millions of dollars into a web of offshore entities and personal bank accounts. As funds came into Building Funding, LLC, the two men siphoned them off for their personal gain. This scheme went on for years. From 2013 to 2017, Wu and Lam offered Chinese investors a path to American residency with one hand and looted their investments with the other.

In 2019, Wu's scheme unraveled. At that time, the tower still stood as "vacant and unimproved" as it had been in 2013. And the project, despite Wu's representations, created "few" jobs.

In 2020, Liu filed a suit in a Florida court against Lam and Building Funding, LLC for breach of fiduciary duty and equitable relief. The state court eventually appointed a receiver for Building Funding, LLC, who commenced an ancillary action against Wu, Lam, and their companies. Wu settled with the receiver in 2022. Under the settlement, Wu agreed to transfer various properties to the receiver. In exchange, Wu would receive up to $5 million from the properties' sale, with the rest of the proceeds returned to investors.

Angered that Wu would benefit from his fraud and certain that investors would recover less than the value of their investment, Liu filed a class action in a Florida court that alleged fraud, violations of the Florida Securities and Investor Protection Act, and

violations of and conspiracy to violate the Florida Racketeer Influenced and Corrupt Organizations Act. And he asked the court for a prejudgment writ of attachment on Wu's settlement funds lest Wu "divert[], los[e], squander[], secret[], or conceal[]" them.

At first, Wu contented himself with litigating in the state court. In quick succession, he filed responses to Liu's emergency motion, moved for a protective order, filed objections to Liu's discovery requests, filed discovery requests of his own, and scheduled depositions. Then, he invoked the purchase agreement between Liu and Building Funding, LLC and the arbitration clause that applied to any "dispute, controversy or claim arising out of or relating to th[e] Agreement, [and] any relationship created herein." Based on that clause, Wu moved to compel arbitration. But Liu argued that, under Florida law, Wu waived his "contractual right to arbitrate by actively participating in [the] lawsuit [and] taking action[s] inconsistent with that right."

Stymied by his own litigation decisions in state court, Wu decided to try the same tactic in a different forum. On the same day that Liu responded to Wu's motion to compel arbitration in state court, Wu filed a notice of removal that also moved to compel arbitration and sought a stay in the district court. He based removal jurisdiction on section 205 of the Federal Arbitration Act, which empowers district courts to hear suits removed from state court that "relate[] to an arbitration agreement . . . falling under the [Convention on the Recognition and Enforcement of Foreign Arbitral Awards]." 9 U.S.C. § 205. And he based his motion to compel

arbitration on the purchase agreement on the ground that it qualified as a "written agreement" within the meaning of the Convention. In response, Liu moved to remand.

In a single order, the district court denied Wu's motion to compel arbitration and remanded the action. It ruled that Wu failed to meet the "jurisdictional prerequisites for the arbitration agreement to fall under the Convention" because Wu "[was] not a signatory to the Purchase Agreement and, therefore, to the arbitration clause." And it ruled that Wu failed to "provide[] any additional basis for . . . jurisdiction" aside from section 205 of the Arbitration Act. So it granted Liu's "motion to remand and order[ed] the case to proceed in state court."

## II. STANDARD OF REVIEW

We review our jurisdiction *de novo*. *Overlook Gardens Props., LLC v. ORIX USA, L.P.*, 927 F.3d 1194, 1998 (11th Cir. 2019).

## III. DISCUSSION

Wu and Lam frame their appeal as a challenge to the denial of their motion to compel arbitration, not to the remand order. From their perspective, jurisdiction is a nonissue. Liu responds that the issue of arbitration cannot be divorced from the assessment of subject-matter jurisdiction and that section 1447(d) bars our review. Because we agree that section 1447(d) applies, we dismiss Wu and Lam's appeal for lack of jurisdiction.

Federal courts, we often explain, "are courts of limited jurisdiction." *Wood v. Raffensperger*, 981 F.3d 1307, 1310 (11th Cir. 2020).

24-10397                Opinion of the Court                7

Some limitations come from Article III of the Constitution, which describes the "Cases" and "Controversies" we may decide. U.S. CONST. art. III, § 2. Other limitations come from federal statutes, which define our jurisdiction as "inferior Courts." *See id.* art. III, § 1.

Congress has provided a general rule that remand orders are unreviewable on appeal. *See* 28 U.S.C. § 1447(d). This bar, which "applies equally" to suits removed under the general removal statute, 28 U.S.C. § 1441, and "to those removed under other provisions," represents a tradeoff. *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 641 (2006). When Congress restricted our appellate review, it "established [a] policy" that favored resolution in state courts over "prolonged ligation of questions of jurisdiction" in federal courts. *United States v. Rice*, 327 U.S. 742, 751 (1946). But this policy comes at a cost: we cannot review remand orders premised on lack of subject-matter jurisdiction or procedural defect "no matter how plain the legal error." *Briscoe v. Bell*, 432 U.S. 404, 414 n.13 (1977). And, "[a]bsent a clear statutory command to the contrary," this bar also applies "when Congress creates a new ground for removal." *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 128 (1995).

Nevertheless, we may review remand orders "that determine[] the substantive issues of the case in a way that is conclusive because it is unreviewable by the state court." *Vachon v. Travelers Home & Marine Ins.*, 20 F.4th 1343, 1347 (11th Cir. 2021) (citation and internal quotation marks omitted). But we may not do so when "the substantive issue is intrinsic to the district court's decision to remand for lack of subject matter jurisdiction." *Calderon v. Aerovias*

*Nacionales de Colom.*, 929 F.2d 599, 602 (11th Cir. 1991). And relatedly we may review orders that "lead to, but are separate from, orders of remand and have a conclusive effect upon the ensuing state court action." *Aquamar S.A. v. Del Monte Fresh Produce N.A., Inc.*, 179 F.3d 1279, 1286 (11th Cir. 1999). This exception to the bar of appellate review finds its origin in *Waco v. United States Fidelity & Guaranty Co.*, 293 U.S. 140, 142–43 (1934), where the Supreme Court held that appellate jurisdiction extended to an order that, "in a single decree, . . . entered one order dismissing a cross-complaint against one party, and another order remanding because there was no diversity of citizenship in light of the dismissal." *Powerex Corp. v. Reliant Energy Servs.*, 551 U.S. 224, 236 (2007).

Under the Federal Arbitration Act, federal courts possess "original federal subject-matter jurisdiction over any action" that arises under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1440 (11th Cir. 1998), *overruled in part by Corporación AIC, S.A. v. Hidroeléctrica Santa Rita S.A.*, 66 F.4th 876, 880 (11th Cir. 2023) (en banc); 9 U.S.C. § 201. When a plaintiff files an action in state court that "relates to an arbitration agreement or award falling under the Convention," the defendant may "remove" the action to a federal district court using the "procedure[s] . . . otherwise provided by law." 9 U.S.C. § 205. The district court may then enter an order to compel arbitration. *Id.* § 206. But if the district court denies the motion to compel, the defendant may appeal the denial to our Court. *Id.* § 16(a)(1)(C).

24-10397                Opinion of the Court                9

We must consider whether the text of the Arbitration Act gives us jurisdiction to review the order entered by the district court, notwithstanding the bar of review under section 1447(d). The Act provides that a litigant may appeal "an order . . . denying an application under section 206 of this title to compel arbitration." *Id.* But it also provides that "[t]he procedure for removal of causes *otherwise provided by law* shall apply" to suits removed from state court. *Id.* § 205 (emphasis added). Section 16(a)(1)(C) gives us jurisdiction to hear denials of motions to compel arbitration filed in federal district court as an original matter. Our question is whether section 16 also serves as a statutory exemption for the typical "procedure"—section 1447(d)—"otherwise provided by law" for orders that deny a motion to compel arbitration and remand the suit for lack of subject-matter jurisdiction. *Id.*

When Congress intends to make section 1447(d) inapplicable to new grounds for removal, it says so expressly. *See, e.g.*, 12 U.S.C. § 1819(b)(2)(C) ("The Corporation may appeal any order of remand entered by any United States district court."). Even section 1447(d) excepts some remand orders from its bar of appellate review. 28 U.S.C. § 1447(d) (excepting orders "remanding a case . . . pursuant to section 1442 or 1443 of this title"). But section 205 of the Arbitration Act has no such "clear statutory command." *Things Remembered*, 516 U.S. at 128.

We acknowledge that the Arbitration Act expressly excepts removal petitions filed under section 205 from one of the "[t]he procedure[s] . . . otherwise provided by law." 9 U.S.C. § 205.

Ordinarily, the "rule is that absent diversity of citizenship, the only basis for removal is when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Lindley v. Fed. Deposit Ins. Corp.*, 733 F.3d 1043, 1050 (11th Cir. 2013) (citation and internal quotation marks omitted). But for removal petitions filed under section 205, "the ground for removal . . . need not appear on the face of the complaint but may be shown in the petition for removal." 9 U.S.C. § 205. That Congress excepted removal petitions filed under section 205 from one of the "procedure[s] . . . provided by law" but not others, establishes that if it had wanted section 205 to operate outside of section 1447(d), it would have said so expressly.

Section 16(a)(1)(C) of the Arbitration Act—which gives us jurisdiction to hear appeals of orders that deny motions to compel arbitration—does not except orders that both deny a motion to compel arbitration *and* remand the suit for lack of jurisdiction from section 1447(d)'s jurisdictional bar. This reading does not reduce section 16(a)(1)(C) to a nullity, as Wu suggests. Instead, it interprets the statutory provisions "in a way that renders them compatible, not contradictory." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS § 27, at 180 (2012). It pays heed to section 205's direction that the "procedure[s] . . . otherwise provided by law shall apply." 9 U.S.C. § 205. At the same time, it honors the grant of appellate jurisdiction in section 16(a)(1)(C) because we retain jurisdiction to hear denials of motions to compel arbitration filed in district courts as an original matter.

A contrary conclusion would render section 1447(d) a nullity, not the other way around. "[A]ppellate review of . . . remand orders under [section] 16 would circumvent [section] 1447(d) by affording review of remand orders issued in nearly every case removed under [section] 205." *Dahiya v. Talmidge Int'l, Ltd.*, 371 F.3d 207, 210 (5th Cir. 2004). But section 205, "by expressly invoking the procedure for removal of causes otherwise provided by law, forecloses such a result." *Id.* (alteration adopted) (internal quotation marks omitted). Wu cannot use section 16 as a workaround to the bar of our appellate jurisdiction under section 1447(d).

Without an express statutory exception, we turn to the matter-of-substantive-law exception and the *Waco* exception. In *Aquamar*, we distinguished between them. 179 F.3d at 1286. The matter-of-substantive-law exception, we explained, "applies to the review of a remand order *itself*." *Id.* It "allows the courts of appeals to review those remands to state court" that determine "the substantive issues of the case in a way that is conclusive because it is unreviewable by the state court." *Id.* at 1285–86. But this exception "does not apply to a remand based on a district court's jurisdictional findings [as those] findings have no conclusive effect upon the state court action." *Id.* at 1286. The *Waco* exception, on the other hand, applies when a district court "do[es] something" in addition to the "remand (such as a dismissal of a claim or a party), and this order changes the contours of the state court action after remand in a way that could not be reviewed on appeal in state court." *Id.*

The matter-of-substantive-law exception does not apply. Although "it is unclear what aspect of the judicial Power of the United States authorizes us to carve out exceptions to Congress's lawful restriction of our jurisdiction," that judge-made "exception is inapplicable" here in any event. *Vachon*, 20 F.4th at 1347 (citation and internal quotation marks omitted). The district court entered a single order that both denied the motion to compel arbitration and granted the motion to remand. But it conducted its arbitration analysis as an assessment of "jurisdictional prerequisites." In other words, its ruling that Wu could not enforce the arbitration clause was a federal "jurisdictional finding[]" that has no effect on the state action. *Id.* This exception cannot supply jurisdiction.

Even if we were to slice the order in two, as Wu asks, the *Waco* exception would not supply jurisdiction. Recall that the *Waco* exception allows us to review orders that "lead to, but are separate from, orders of remand and have a conclusive effect upon the ensuing state court action." *Id.* (discussing *Waco*, 293 U.S. at 143). Even if we were to cast the denial of Wu's motion to compel arbitration as a separate order, it would not be a conclusive one. *See Hernandez v. Seminole County*, 334 F.3d 1233, 1241 (11th Cir. 2003) (explaining that an order is conclusive under *Waco* only if it will be "functionally unreviewable in the state court, and it changes the contours of the state court action after remand"). Collateral estoppel would not bar the state court from revisiting the arbitration question both because state courts can reconsider jurisdictional findings and because section 1447(d) "prevents [Wu] from appealing the [d]istrict [c]ourt's decision." *Kircher*, 547 U.S. at 647; *see also*

*City of Oldsmar v. State*, 790 So. 2d 1042, 1046 n.4 (Fla. 2001) (noting that, under Florida law, collateral estoppel applies only when a matter has been "fully litigated and determined in a contest that results in a final decision of a court of competent jurisdiction"). At most, the remand order "is final and has preclusive potential only for the issue" of removal jurisdiction. *In re Loudermilch*, 158 F.3d 1143, 1146 (11th Cir. 1998).

The decision of the Supreme Court in *Kircher* confirms our conclusion. In *Kircher*, the district court based its remand order on a finding that the cause of action was not a "covered" class-action suit as defined by the Securities Litigation Uniform Standards Act of 1998, so it lacked subject-matter jurisdiction. 547 U.S. at 636–38. The Supreme Court held that section 1447(d) barred review of the remand itself *and* the ruling on the application of the Uniform Standards Act. *Id.* at 642–44. Because the remand order could not "be disaggregated [like] the *Waco* orders," the Court reasoned that the "work done" by the district court "[was] jurisdictional, as [was] the conclusion reached and the order implementing it." *Id.* at 644, 646 n.13. On remand, the "state court . . . [was] perfectly free to reject the remanding court's reasoning" even though "the remand's basis coincide[d] entirely with the merits of the federal question." *Id.* at 647. So too here. We cannot "disaggregate[]" the district court's refusal to compel arbitration from its remand because the substantive issue is intrinsic to its decision to remand for lack of subject-matter jurisdiction. *Id.* at 646 n.13. On remand, the state court remains "free" to reject the ruling by the district court that Wu cannot enforce the arbitration agreement. *Id.* at 647.

In a final effort to avoid the bar of section 1447(d), Wu contends that the order was "based on a forum selection clause," not a lack of subject-matter jurisdiction, and his best precedent is *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1260 (11th Cir. 1999). But *Snapper* is inapposite. The *Snapper* defendants removed their case based on diversity jurisdiction, which was never contested, and the district court remanded to state court after it determined that the forum-selection clause in the parties' contract waived their right to removal. *Id.* at 1251–52. The district court in *Snapper* had diversity jurisdiction to hear the case, but ruled only that removal was improper based on the contract. *Id.* And we, in turn, ruled that section 1447(d) did "not bar our review of the . . . remand order" because it was "based upon [the interpretation of] a forum selection clause" and not a ground covered by section 1447(d). *Id.* at 1260.

Unlike in *Snapper*, removal jurisdiction here turns on the enforceability of the arbitration clause. Although we have jurisdiction to review some remand orders that turn on forum-selection clauses, we lack jurisdiction to review those orders where the enforceability of the clause serves as a predicate for our subject-matter jurisdiction. This appeal falls into the latter category.

## IV. CONCLUSION

We **DISMISS** Wu and Lam's appeal for lack of jurisdiction.